# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| MELANIE LEWIS, | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 2:19-cv-00062 |
| GLORIA GROSS, Warden, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

The pro se petitioner, Melanie Lewis, was convicted in Cumberland County Circuit Court on March 26, 2012, upon pleading guilty to two counts of conspiracy to sell a Schedule II narcotic in an amount under .5 grams. She received an effective six-year sentence that was suspended to probation under the supervision of the Tennessee Department of Correction (TDOC). (Doc. No. 18-1 at 14).

Twice in 2015, Petitioner violated her probation. After the first violation, she had a year added on to her probation. (Id. at 10, 14). After the second violation, Petitioner was placed on a higher level of supervision, with her "TDOC Probation to be supervised by Community Corrections." (Id. at 8; see id. at 14). Finally, after violating her Community Corrections-supervised probation in 2017, Petitioner's probation was revoked on May 5, 2017, and she was remanded to TDOC custody to serve her prison sentence. (Id. at 13). The revocation order accounted for credits against that sentence for time served in county jail. (Id.).

Petitioner disputed the calculation of her sentence in the courts of the State of Tennessee, based on her belief that she was also entitled to sentence credits from her time on Community

Corrections. She filed a pro se motion to correct a clerical error in the state-court revocation order under Tennessee Rule of Criminal Procedure 36, asserting that her original sentence should be credited with the 557 days she spent under Community Corrections supervision, in addition to the time she spent in jail. (Id. at 3–6). But the trial court found that she "was never supervised under straight community correction" and was therefore not entitled to additional sentence credit. (Id. at 15). Petitioner appealed this decision but failed to file a timely pro se appellate brief, so her appeal was dismissed. (Doc. No. 18-3). The Tennessee Court of Criminal Appeals denied Petitioner's subsequent request for reinstatement of the matter to the appellate docket (Doc. No. 18-5), and the Tennessee Supreme Court denied her request for permission to appeal. (Doc. No. 18-7).

After the Tennessee Supreme Court denied relief, Petitioner filed the instant habeas petition under 28 U.S.C. § 2254 (Doc. No. 1, "the Petition") and paid the filing fee. (Doc. No. 11). In response, Respondent filed the transcript of proceedings in state court (Doc. No. 18) and an Answer to the Petition (Doc. No. 19). Petitioner filed a Reply to Respondent's Answer. (Doc. No. 20).

This matter is fully briefed and ripe for the Court's review, and the Court has jurisdiction. Respondent does not dispute that this is Petitioner's first Section 2254 petition related to this judgment of conviction. (Doc. No. 19 at 1). Having reviewed Petitioner's arguments and the underlying record, the Court finds that an evidentiary hearing is not required. As explained below, Petitioner is not entitled to relief under Section 2254, and her Petition will therefore be denied.

## II. ISSUES PRESENTED

The Petition presents two issues for review:

(1) Petitioner was deprived of due process when the May 5, 2017 revocation order failed to credit Petitioner with time served on Community Corrections; and

(2) Petitioner was deprived of the effective assistance of counsel in revocation proceedings.

2

(Doc. No. 1 at 5–6).

### III. LEGAL STANDARD

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" Woodford v. Garceau, 538 U.S. 202, 206 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." Uttecht v. Brown, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. at 410). Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

3

Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007) (quoting Section 2254(d)(2) and (e)(1)); but see McMullan v. Booker, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read Matthews to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011).

The standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations and internal quotation marks omitted). The petitioner bears the burden of proof. Id.

4

## IV. ANALYSIS

The Petition in this case is entirely focused on the sentencing court's determinations with respect to the application of credits after Petitioner's probation was revoked. Petitioner claims that her due process "rights were violated [because the] Revocation Order[']s not being followed[,] that she is not receiving . . . all of her credits and being subjected to an extended sentence that is not in agreement with the Revocation Order." (Doc. No. 1 at 5–6). As relief, Petitioner asks the Court "to order that [TDOC] award the Petitioner as per her Revocation Order, the 16 days of jail credit and the 557 Community Corrections credit, and any other relief to which the petitioner may be entitled." (Id. at 8–9).

While Respondent asserts procedural defenses in her Answer, including the statute of limitations and procedural default, the claims of the Petition are devoid of merit. The Court will, as a matter of judicial economy, bypass these procedural issues and adjudicate the merits of Petitioner's claims. See Smith v. State of Ohio Dep't of Rehab. & Corr., 463 F.3d 426, 429 n.2 (6th Cir. 2006) (citing Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006), for the proposition that, "because neither the statute of limitations nor procedural default constitutes a jurisdictional bar to our review," the court could adjudicate merits of a petition that is probably untimely, "in the interest of judicial economy")); Mateo-Castellanos v. Rapelje, No. 2:11-CV-13761, 2013 WL 1555210, at *2 (E.D. Mich. May 1, 2012) ("In the present case, because of the complexities involved, it appears to be simply easier and more judicially efficient to adjudicate petitioner's claims on the merits" than to analyze procedural defenses).

Petitioner asserts that due process imposes both "procedural and substantive limits on the revocation of the conditional liberty created by probation," citing Black v. Romano, 471 U.S. 606, 610 (1985). (Doc. No. 1 at 5). While that is true as far as it goes, it only goes so far as to broadly

ensure the fundamental fairness of the decision to end the probation, see Black, 471 U.S. at 611–16, not to ensure the integrity of the "sentencing structure after . . . probation was revoked," as Petitioner asserts here. (Doc. No. 1 at 5). The Supreme Court in Black stated that, although the limits of due process provide guardrails for the probation-revocation decision, they do so without interfering with the "exercise of discretion by the sentencing authority" or otherwise "threaten[ing] the informal nature of probation revocation proceedings," "which do[] not require the full panoply of procedural safeguards associated with a criminal trial." 471 U.S. at 611, 613.

In one sentence that follows the framing of the Petition as related to her probation revocation, Petitioner "avers that she was not privy to effective assistance of counsel under the Sixth Amendment." (Doc. No. 1 at 5). However, the assistance of counsel is one of the procedural safeguards that is not generally required at a probation revocation hearing. United States v. Salamanca, 821 F. App'x 584, 587 (6th Cir. 2020), cert. denied, 141 S. Ct. 2727 (2021). Exceptions to this general rule are made "in special circumstances" under the Supreme Court's decision in Gagnon v. Scarpelli, 411 U.S. 778 (1973), which "requires a probationer asserting a right to counsel to colorably claim either that (1) he did not violate his probation or (2) revocation is unwarranted due to 'substantial reasons' justifying or mitigating the violation and that those reasons 'are complex or otherwise difficult to develop or present.'" Salamanca, 821 F. App'x at 587 (quoting Scarpelli, 411 U.S. at 790). No such claims are made in the case before this Court. Even if they were, it appears that Petitioner was represented by counsel, Attorney Ivy Gardner, at the hearing that produced the May 5, 2017 revocation order. (See Doc. No. 18-1 at 13). Petitioner is not entitled to habeas relief based on her conclusory assertion that, after multiple probation violations, the assistance she received at this final revocation hearing was not constitutionally effective.

6

Case 2:19-cv-00062   Document 21   Filed 06/21/22   Page 6 of 10 PageID #: 132

Two obstacles preclude relief on Petitioner's claim that due process requires that she be credited with time served on Community Corrections. First, Petitioner appears to simply misunderstand the state scheme for awarding Community Corrections-related sentence credit, which draws a distinction between those sentenced to Community Corrections versus those sentenced, as Petitioner was, to probation supervised by Community Corrections. The court in State v. Schurman, No. M2011-01460-CCA-R3CD, 2012 WL 1657057 (Tenn. Crim. App. May 10, 2012), explained and applied this distinction as follows:

> A defendant sentenced to the community corrections program is actually serving his sentence while in the program in lieu of incarceration, while service of the sentence is suspended for a defendant placed on probation. In the event of revocation, a defendant on probation receives no credit for time served, but a participant in the community corrections program does. The trial court's August 23, 2010 order reflects that it placed appellant on probation supervised by the community corrections program. The trial court originally sentenced appellant to probation, not community corrections. Appellant is not entitled to credit for time served on probation supervised by community corrections.

Id. at *2 (internal citations and quotation marks omitted). Here, as in Schurman, the trial court originally sentenced Petitioner to probation, not Community Corrections, and later modified her supervision status so that her probation was "supervised by Community Corrections." (Doc. No. 18-1 at 8, 14). Accordingly, as the trial court ruled in denying relief, Petitioner was not entitled to sentence credit for time spent on such supervision.

Second, even if Petitioner were erroneously denied credits to which she was entitled, and even though she claims a due process violation as a result, courts have consistently held such claims to be not cognizable on federal habeas review. "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only," Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003), and "[c]laims challenging whether or how much jail credit is applied to state sentences under state law are also a matter of state law and not cognizable

7

on federal habeas review." LaPine v. Romanowski, No. 15-11206, 2022 WL 247861, at *20 (E.D. Mich. Jan. 25, 2022); see also, e.g., Armstrong v. Salinas, No. CIV.A. 6:13-179-KKC, 2014 WL 340399, at *7 (E.D. Ky. Jan. 30, 2014). While "[i]ncarcerating a prisoner after the expiration of his maximum sentence may result in a constitutional violation[,] . . . the actual computation of [the] prison term involves a matter of state law that is not cognizable under 28 U.S.C. § 2254." Kipen v. Renico, 65 F. App'x 958, 959 (6th Cir. 2003); see also Cool v. Miller, No. 5:13-CV-1139, 2014 WL 11321655, at *3 (N.D. Ohio June 30, 2014), report and recommendation adopted, 2016 WL 2610564 (N.D. Ohio May 6, 2016) ("Although Petitioner contends that the State has continued to incarcerate him after the expiration of his terms of imprisonment, he bases his argument on his own interpretation of Ohio administrative law governing the crediting of time served, an issue squarely in the province of the State, and one that is not cognizable on habeas review.").

In this case, all of Petitioner's efforts in both state and federal court have been directed toward the correction of an allegedly mistaken computation of sentence credits during 2017 revocation proceedings—a matter of state law that is not cognizable under Section 2254. She has not claimed that she is subject to incarceration past the expiration of her maximum sentence. (See Doc. No. 18-1 at 4 (stating that Petitioner's sentence "will not fully expire until September 11, 2022")). Although Petitioner asserts for the first time in her Reply to Respondent's Answer that her guilty plea was coerced, that plea counsel was ineffective, and that she is actually innocent of the underlying drug charges (Doc. No. 20 at 1–2), these claims are not properly before the Court. "The Sixth Circuit holds that, in the habeas context, a claim that is raised for the first time in a petitioner's reply (or traverse) 'is not properly before the district court.'" Johnson v. Genovese, No. 3:14-CV-02305, 2018 WL 1566826, at *21 (M.D. Tenn. Mar. 30, 2018), aff'd, 924 F.3d 929,

8

Case 2:19-cv-00062   Document 21   Filed 06/21/22   Page 8 of 10 PageID #: 134

937 (6th Cir. 2019) ("We typically do not entertain arguments raised for the first time in the reply brief." (citing United States v. Galaviz, 645 F.3d 347, 362 (6th Cir. 2011)); see also, e.g., Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005). In light of the categorical difference between these conviction-based claims first raised in Petitioner's Reply, and the sentencing claims she has previously advanced in this Court and in state court, the new claims in her Reply will not be considered here.

## V. CONCLUSION

For the reasons given above, the Petition for Writ of Habeas Corpus (Doc. No. 1) will be **DENIED**, and this action will be **DISMISSED** with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a Section 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. Id. at 337.

Because reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or deserve encouragement to proceed further, the Court will **DENY** a COA. Petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE